UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| SUSAN INGRAM, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:09CV1358 TIA |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| COMMISSIONER OF SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |

## **MEMORANDUM AND ORDER**

This matter is before the Court under 42 U.S.C. § 405(g) judicial review of the denial of Plaintiff's application for Disability Insurance Benefits under Title II of the Social Security Act. The parties consented to the jurisdiction of the undersigned pursuant to 28 U.S.C. § 636(c).

## **I. Procedural History**

On December 15, 2006, Plaintiff protectively filed an application for Disability Insurance Benefits (DIB), alleging disability beginning March 10, 2005 due to scoliosis, Harrington rod in back, and pain. (Tr. 16, 61, 97-101) Plaintiff later amended her alleged onset date to December 4, 2006, which was the last day she worked. (Tr. 16, 188) Plaintiff's application was denied on March 5, 2007, after which Plaintiff requested a hearing before an Administrative Law Judge (ALJ). (Tr. 59-65, 68) On September 16, 2008, Plaintiff appeared and testified at hearing before an ALJ. (Tr. 27-58) In a decision dated October 21, 2008, the ALJ determined that Plaintiff was not under a disability from December 4, 2006 through the date of the decision. (Tr. 16-26) On June 26, 2009, the Appeals Council denied Plaintiff's Request for Review. (Tr. 1-3) Thus, the decision of the ALJ stands as the final decision of the Commissioner.

## II. Evidence Before the ALJ

At the hearing before the ALJ, Plaintiff was represented by counsel. Upon questioning by the ALJ, Plaintiff testified that she was 47 years old and married. She had an 11th grade education and did not pass her GED test. Plaintiff was 4 feet 11 inches tall and weighed 99 pounds. She had no problems reading or performing simple arithmetic. (Tr. 33-35)

With regard to Plaintiff's alleged impairments, she testified that she experienced numbing pain throughout her neck if she sat for too long. The pain began in the right side of her neck and radiated down. She also experienced muscle spasm in between her shoulder blades. Plaintiff stated that she could sit for 15 minutes before feeling pain in her neck. She could stand for about 15 minutes and could only walk 15 to 20 feet before her legs started to feel heavy. Plaintiff stated that her only impairment was her back problem. She had been diagnosed with Grave's disease but stated that medication helped. She experienced pain in her neck, between her shoulder blades, and in her lower back. (Tr. 36-37)

Plaintiff testified that she last worked in a factory at Esselte Corporation picking up orders for a sample department. She lifted no more than 10 pounds, stood for a total of 1 hour, and sat for 7 hours during an 8 hour work day. After 10 years of working for that company, Plaintiff's position changed, requiring her to climb steps, lift heavy boxes, and move boxes around on a pallet jack. Plaintiff was terminated for insubordination after losing her temper and using profanity. Prior to that job, Plaintiff worked as a cashier at the Dollar General store for approximately 6 months. She also worked as a cashier at a gas station for 4 years. With regard to Plaintiff's most recent job at Esselte Corporation, she started working for the factory as a janitor, moved into quality control to check label makers, and then worked in the fulfillment/warehouse department. Plaintiff's position in quality

control required her to use a computer. Plaintiff also previously worked at Style Master sewing baseball caps and Mullen Machinery as a sprayer and molder. (Tr. 37-43)

Plaintiff rated her level of pain in her neck and lower back as a 9 on a scale of 1 to 10. She experienced a constant, dull pain in her lower back and occasional, sharp pain in her neck. Plaintiff testified that her doctor imposed work restrictions consisting of no lifting over 5 pounds no pushing carts carrying heavy weight, and no working the jack. Plaintiff took Tapazole for her thyroid and Oxycontin and Percocet for her pain. She also took a pill for depression and Xanax for anxiety attacks. She described her anxiety attacks as becoming nervous, upset, and unable to breathe. Plaintiff opined that tension brought on the anxiety attacks. Plaintiff also stated that she smoked a pack of cigarettes daily. She did not drink alcohol or use illicit drugs. (Tr. 43-46)

Plaintiff had a driver's license and drove about once a week, usually to visit her son's girlfriend who lived 5 to 6 miles away. Plaintiff was able to do a little bit of housework, including washing dishes, and doing laundry. She was unable to do yard work, vacuum, dust, sweep, mop, clean windows, clean toilets, or do any housework that required bending over. She could sometimes cook meals. When Plaintiff filed her disability application, she claimed that she was unable to lift over 25 pounds. Since that time, her doctor changed her lifting restriction to no more than 5 pounds. Plaintiff's hobbies included reading and embroidering for short periods of time. Her husband did the grocery shopping. Plaintiff thought she could lift a gallon of milk. She was able to bathe and get herself ready in the morning. Plaintiff had trouble sleeping because she was unable to get comfortable. She experienced no side effects from her medication. (Tr. 46-49)

Plaintiff's attorney also questioned her about her alleged impairments. Plaintiff stated that when her pain was bad, she would lay down 8 or 9 times a day for about 15 to 20 minutes each time

3

to relieve the pressure. Plaintiff sometimes used heat and stretched. Plaintiff further testified that surgery was not an option. She had a rod fused to her spinal cord, which would be difficult to remove. In addition, placing a rod in her lower lumbar area would prevent her from bending over at all. (Tr. 49-50)

John F. McGowan, a Vocational Expert ("VE"), also testified at the hearing. The ALJ asked the VE to assume a hypothetical individual with Plaintiff's education, training, and work experience at the time of the alleged onset date. The VE was to further assume this person could occasionally lift 20 pounds and frequently lift 10 pounds. She could stand; walk six hours; sit six hours; climb stairs and ramps occasionally; never climb ropes, ladders, and scaffolds; stoop, kneel, or crouch occasionally; never crawl; and reach overhead occasionally. Further the individual needed to avoid exposure to hazardous heights and machinery. Given this hypothetical with these limitations, the VE opined that such a person could perform Plaintiff's past work as a quality control factory worker and convenience and grocery store clerk as she described such work. (Tr. 51-56)

In the second hypothetical, the ALJ asked the VE to assume the individual could lift no more than 10 pounds; stand or walk 2 hours; sit 6 hours; and never reach overhead. The VE testified that such individual could work in quality control only. For the third hypothetical, the VE assumed that the individual could lift no more than 5 pounds and stand and sit for 2 hours with an option to shift positions every 30 minutes, with the other limitations from hypothetical two still in place. Because the electrical cartons Plaintiff lifted in her prior job weighed more than 5 pounds, the VE answered that Plaintiff would not be able to perform any of her previous jobs. In addition, her ability to perform any other jobs, in light of her age and weight lifting restrictions, was severely limited such

4

that she would be unable to work. (Supp. Tr. 3, pp. 29-30)[1]

The Plaintiff's attorney then added the further limitations of no repetitive bending and rest periods totaling up to 7 ½ hours throughout the work day. In response to the additional limitations, the VE testified that Plaintiff would not be capable of performing any of the previously listed jobs. (Tr. 57)

The Plaintiff also completed a Disability Report – Adult. She reported that her condition limited her ability to do work in that she could not perform repetitive tasks, she had weight and carrying restrictions, and she could not stand or sit for very long. She performed the job of quality control in a factory for 7 years, which required 1 hour of walking, ½ hour of standing, 6 hours of sitting, ¼ hour of stooping, 1 hour of reaching, and 6 ½ hours of writing, typing, or handling small objects. The heaviest weight Plaintiff lifted was 20 pounds, and she only lifted 10 pounds frequently. Her medications included Lexapro, Tylenol, Vicodin, and Xanax. (Tr. 122-30)

In a Function Report – Adult dated January 2, 2007, Plaintiff described her activities from the time she woke up until she went to bed as making coffee; brushing teeth and hair; eating breakfast; doing chores such as washing dishes and dusting; eating lunch; napping, watching TV; cooking dinner; watching more TV; and going to bed. She visited friends and family 3 or 4 days a week and also went to the grocery store. Plaintiff could no longer lift heavy objects, walk long distances, sit for long periods of time, climb stairs frequently, or pull heavy weights. She also woke up 4 or 5 times a night to move positions. Plaintiff was able to cook meals daily, and do laundry, dishes, and dusting.

---

[1] Upon review of the transcript, the undersigned noticed that a page was missing from the VE's testimony. The Court promptly contacted the Defendant's office to obtain a certified copy of the missing testimony to ensure a complete record. On March 16, 2011, Defendant filed a Supplemental Certified Administrative Transcript and attached the entire transcript of oral hearing as Supp. transcript 3, Doc. #29-3.

She needed help with vacuuming, sweeping, and mopping, and she was unable to perform any yard work. In addition to reading and watching TV, Plaintiff enjoyed camping about once a month. She reported being able to lift over 25 pounds. She could not squat, bend, or reach because these activities caused pain in her knees, shoulders, and back. In addition, sitting caused numbness and pain in her neck and shoulder. Plaintiff estimated that she could walk 500 feet before needing to rest for 15 to 20 minutes. Plaintiff also reported problems with her memory and concentration due to medication. (Tr. 148-55)

### III. Medical Evidence

Dr. James T. Merenda treated Plaintiff for back, neck, and shoulder pain. In 1995, Dr. Merenda noted that Plaintiff's pain could be due to hardware irritation from Rod Harrington fusion for thoracic curve. In 1997, Dr. Merenda advised Plaintiff's employer that she was not allowed to lift anything greater than 25 pounds or engage in any repetitive bending or prolonged standing. On December 15, 1998, Dr. Merenda noted that Plaintiff had good range of motion and was neurologically fine. He opined that her back pain was due to an asymmetrical disc loading from the lumbar scoliosis. However, it was not progressive enough to warrant extension of the fusion. On March 8, 2005, Dr. James T. Merenda reported that he had seen Plaintiff off and on for years for her back and neck complaints. Plaintiff complained of a 2-month history of neck and right biceps pain after performing heavy work. Dr. Merenda recommended physical therapy and a Medrol dose pack. (Tr. 195-203)

On January 4, 2006, Plaintiff saw Dr. Patrick Smith for a routine examination. She complained of back pain and cold symptoms. (Tr. 227) On February 24, 2006, Plaintiff experienced

6

a syncopal event causing her to fall and hit her head on a concrete floor. Plaintiff spent the night in the hospital and was discharged on February 25, 2006 with diagnoses of closed brain injury secondary to syncopal event with fall and secondary seizures; anxiety disorder; and recurrent back pain. Physical examination during Plaintiff's hospital stay revealed no pain to palpation of the cervical, thoracic, or lumbar spine. Plaintiff denied any neck pain, and she had full range of motion in her extremities. X-rays of Plaintiff's cervical spine revealed normal vertebral alignment and no evidence of acute fracture or subluxation. In addition, a CT scan of the head was normal. (Tr. 210-16, 221, 226)

On April 6, 2006, Plaintiff reported to Dr. Smith that she was depressed after she stopped taking anti-depressants. Dr. Smith prescribed Lexapro, which Plaintiff said "worked well." (Tr. 226) Plaintiff returned to Dr. Smith on July 27, 2006 for complaints of a back ache off and on, as well as left knee and foot pain. (Tr. 225) On August 25, 2006, Plaintiff complained of back pain flare-up. X-rays revealed scoliosis. Dr. Smith prescribed pain medication. (Tr. 224)

An MRI of the lumbar spine performed on September 7, 2006 revealed significant scoliosis convex to the left, with no fractures or subluxation. While there was desiccation and disk space narrowing at L2-3 and L3-4, the remaining disks were of normal signal intensity and height. L3-4 showed minimal disk bulging and degenerative changes of the facet joints, and L4-5 showed degenerative changes of the facet joints with ligamentum flavum hypertrophy and minimal disk bulging. The overall impression was significant scoliosis convexed to the left and mild degenerative changes and minimal disk bulging. However, there was no significant central or neural foraminal stenosis. (Tr. 205, 230)

On February 21, 2007, Dr. Barry Burchett examined Plaintiff at the request of disability

determinations. Plaintiff reported increased lumbar area pain, exacerbated by bending, lifting, prolonged standing, or prolonged or repetitive movements. Plaintiff found relief by changing positions frequently and by lying down. Plaintiff also reported neck pain with prolonged sitting. She took 4 Vicodin tables daily. General physical examination revealed normal gait, and she was stable at station and comfortable in the supine and sitting positions. In addition, examination of the cervical spine showed no tenderness over the spinous processes or evidence of paravertebral muscle spasm. With regard to the dorsolumbar spine, the curvature of both the dorsal and lumbar spine was abnormal, with a long scar over the upper dorsal spine. However, there was no evidence of paravertebral muscle spasm or tenderness to percussion of the dorsolumbar spinous processes. Straight leg raise test was negative in both the sitting and supine positions. Plaintiff could stand on one leg at a time without difficulty, and she could perform tandem gait and squat without difficulty. Dr. Burchett assessed scoliosis, status post Harrington Rod placement in the dorsal spine; probable degenerative disc disease of the lumbar spine with scoliosis of the lumbar spine; probable degenerative disc disease of the cervical spine; and depression by history. In sum, Dr. Burchett noted that Plaintiff experienced pain in her entire spine from time to time and that lumbar flexion was only minimally restricted, dorsal spine was very stiff, and cervical spine movement was mildly limited. (Tr. 240-45)

A Physical Residual Functional Capacity Assessment completed on March 5, 2007 opined that Plaintiff could occasionally lift 20 pounds and frequently lift/carry 10 pounds. She could stand and/or walk 6 hours and sit 6 hours during an 8 hour work day. She was limited in pushing and pulling with her upper extremities. In addition, Plaintiff could only occasionally climb, balance, stoop, kneel, crouch, and crawl. Her ability to reach in all directions was also limited. With regard to environmental limitations, the medical consultant opined that Plaintiff should avoid concentrated

exposure to fumes, odors, dust, gases, poor ventilation, and hazards such as machinery and heights. (Tr. 246-50)

Plaintiff returned to Dr. Smith on March 5, 2007. She reported that she felt okay but that she had chronic back pain. (Tr. 256) On August 21, 2007, Plaintiff visited the emergency room at St. John's Mercy Hospital, complaining of left low back pain. Plaintiff was given Demerol, Vistaril, and Percocet, which decreased her pain. Plaintiff was discharged that same day with a diagnosis of acute exacerbation of low back pain and instructions to follow up with her doctor, as well as prescriptions for Percocet and Prednisone. (Tr. 276-89)

On August 22, 2007, Plaintiff followed up with Dr. Smith, who ordered a CT scan. (Tr. 257) The scan, performed on August 24, 2007, revealed moderate levoscoliosis with lumbar alignment otherwise normal. There was no acute fracture or dislocation, nor any spinal canal stenosis, neural foraminal narrowing, or significant disc bulge or protrusion. (Tr. 263, 291) When Plaintiff returned to Dr. Smith on August 28, 2007, he prescribed 3 weeks of physical therapy for Plaintiff's low back pain. (Tr. 257)

On October 2, 2007, Plaintiff complained of back pain with numbness in the back and pain area. Plaintiff did not believe the pain medication was helping. Dr. Smith refilled Plaintiff's Xanax, Oxycontin, and Percocet. (Tr. 257)

Dr. Smith completed a medical source statement on February 26, 2008, wherein he stated that Plaintiff experienced pain with standing, sitting, or any movement of the lower back. She could not lift or perform repetitive bending, and she was very limited with regard to her physical abilities due to pain. Dr. Smith opined that Plaintiff needed to rest 7 ½ hours during an 8 hour work day. He did not believe that Plaintiff was capable of sustained employment at the sedentary level because recurrent

9

pain limited her ability to work, and her symptoms had worsened. (Tr. 252)

On November 4, 2008, Dr. Smith completed another medical source statement. Dr. Smith noted that Plaintiff had developed depression and anxiety. In addition, Dr. Smith reiterated that Plaintiff could not lift or do repetitive bending due to pain and that she was not capable of sedentary work. Dr. Smith further stated that the level of severity dated back to at least August 2007 and was ongoing. Dr. Smith's Medical Assessment of Ability to do Work Related Activities noted that Plaintiff was unable to perform any sustained lifting and carrying, sustained standing and walking, or sustained sitting. In addition, she was unable to use her upper extremities to reach, push, pull, grasp, hold, or perform gross or fine manipulation. Plaintiff's pain levels would frequently be so severe as to interfere with her ability to maintain attention and concentration, and she required more than 3 hours rest during an 8 hour work day. Dr. Smith also examined Plaintiff on that date and continued Plaintiff on Oxycontin, Percocet, and Xanax. He increased her Lexapro prescription. (Tr. 310-14)

## **IV. The ALJ's Determination**

In a decision dated October 21, 2008, the ALJ found that Plaintiff met the insured requirements of the Social Security Act as of the alleged onset date through December 31, 2011. She had not engaged in substantial gainful activity since her amended alleged onset date of December 4, 2006. She had severe scoliosis of the lumbo/thoracic spine to the left and mild to minimal degenerative disc disease and facet joint changes in the lumbar spine. However, Plaintiff did not have an impairment or combination of impairments that met or medically equaled on of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 17-18)

The ALJ further determined that Plaintiff's impairments precluded lifting and carrying more than 10 pounds; standing and/or walking more than 2 hours in an 8 hour work day; sitting more than

10

6 hours in an 8 hour work day; more than occasional climbing stairs and ramps; and more than occasional stooping, kneeling, and crouching. In addition, Plaintiff needed to avoid all exposure to hazardous heights and machinery and could never climb ropes, ladders, and scaffolds. She could never crawl. Based on Plaintiff's testimony and the testimony from the VE, the ALJ found that Plaintiff could perform her past relevant work as a warehouse worker as she performed it for a number of years before her job conditions changed. Thus, the ALJ concluded that Plaintiff had not been under a disability at any time since December 4, 2006 through the date of the decision. (Tr. 18-26)

## V. Legal Standards

A claimant for social security disability benefits must demonstrate that he or she suffers from a physical or mental disability. 42 U.S.C. § 423(a)(1). The Social Security Act defines disability as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period not less than 12 months." 20 C.F.R. § 404.1505(a).

To determine whether a claimant is disabled, the Commissioner engages in a five step evaluation process. See 20 C.F.R. § 404.1520(b)-(f). Those steps require a claimant to show: (1) that she is not engaged in substantial gainful activity; (2) that she has a severe impairment or combination of impairments which significantly limits her physical or mental ability to do basic work activities; or (3) she has an impairment which meets or exceeds one of the impairments listed in 20 C.F.R., Subpart P, Appendix 1; (4) she is unable to return to her past relevant work; and (5) her impairments prevent her from doing any other work. Id.

The Court must affirm the decision of the ALJ if it is supported by substantial evidence. 42

U.S.C. § 405(g). "Substantial evidence 'is less than a preponderance, but enough so that a reasonable mind might find it adequate to support the conclusion.'" Cruse v. Chater, 85 F. 3d 1320, 1323 (8th Cir. 1996) (quoting Oberst v. Shalala, 2 F.3d 249, 250 (8th Cir. 1993)). The Court does not re-weigh the evidence or review the record de novo. Id. at 1328 (citing Robinson v. Sullivan, 956 F.2d 836, 838 (8th Cir. 1992)). Instead, even if it is possible to draw two different conclusions from the evidence, the Court must affirm the Commissioner's decision if it is supported by substantial evidence. Id. at 1320; Clark v. Chater, 75 F.3d 414, 416-17 (8th Cir. 1996).

To determine whether the Commissioner's final decision is supported by substantial evidence, the Court must review the administrative record as a whole and consider: (1) the credibility findings made by the ALJ; (2) the plaintiff's vocational factors; (3) the medical evidence from treating and consulting physicians; (4) the plaintiff's subjective complaints regarding exertional and non-exertional activities and impairments; (5) any corroboration by third parties of the plaintiff's impairments; and (6) the testimony of vocational experts when required which is based upon a proper hypothetical question that sets forth the plaintiff's impairment(s). Stewart v. Secretary of Health & Human Servs., 957 F.2d 581, 585-586 (8th Cir. 1992); Brand v. Secretary of Health Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980).

The ALJ may discount plaintiff's subjective complaints if they are inconsistent with the evidence as a whole, but the law requires the ALJ to make express credibility determinations and set forth the inconsistencies in the record. Marciniak v. Shalala, 49 F.3d 1350, 1354 (8th Cir. 1995). It is not enough that the record contain inconsistencies; the ALJ must specifically demonstrate that he or she considered all the evidence. Id. at 1354; Ricketts v. Secretary of Health & Human Servs., 902 F.2d 661, 664 (8th Cir. 1990).

When a plaintiff claims that the ALJ failed to properly consider subjective complaints, the duty of the Court is to ascertain whether the ALJ considered all of the evidence relevant to plaintiff's complaints under the Polaski[2] standards and whether the evidence so contradicts plaintiff's subjective complaints that the ALJ could discount his testimony as not credible. Benskin v. Bowen, 830 F.2d 878, 882 (8th Cir. 1987). If inconsistencies in the record and a lack of supporting medical evidence support the ALJ's decision, the Court will not reverse the decision simply because some evidence may support the opposite conclusion. Marciniak 49 F.3d at 1354.

## VI. Discussion

Plaintiff appears to raise two arguments in her Brief in Support of the Complaint.[3] First, she asserts that the ALJ erred by not finding that Plaintiff's scoliosis and degenerative disc disease met or equaled the listings with regard to musculoskeletal impairments or that her depression met or equaled the listings with regard to mental impairments. In addition, Plaintiff contends that the ALJ abused his discretion by giving more weight to the consulting physician's opinion than the treating physician's opinion. The Defendant argues that substantial evidence supports the ALJ's

---

[2] The Polaski factors include: (1) the objective medical evidence; (2) the subjective evidence of pain; (3) any precipitating or aggravating factors; (4) the claimant's daily activities; (5) the effects of any medication; and (6) the claimants functional restrictions. Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984).

[3] The undersigned notes that Plaintiff also filed a Motion for Summary Judgment on October 4, 2010, which referenced a non-existent memorandum in support. However, such motion is not properly before this Court. Under Rule 9.02 of the Local Rules of the United States District Court for the Eastern District of Missouri, which pertains specifically to Social Security Appeals, "no motion for summary judgment shall be filed without leave of Court for good cause shown." Instead, a plaintiff must serve and file a brief in support of the complaint, and "[n]o further briefs shall be filed except by leave of Court for good cause shown." E.D. Mo. L.R. 9.02. Here, Plaintiff neither sought leave nor demonstrated good cause for filing a Motion for Summary Judgment or a Motion to Remand submitted the following day.

13

determination that Plaintiff's scoliosis, degenerative disc disease, and mental impairments did not meet or equal the requirements of a listing and that the ALJ properly weighed the medical opinions. The undersigned finds that substantial evidence supports the ALJ's determination that Plaintiff is not disabled.

First, Plaintiff argues that the ALJ erred in not finding that Plaintiff met Listing 1.04 pertaining to Disorders of the Spine or Listing 12.04 pertaining to Affective Disorders. Although Plaintiff quotes the language in these listings, which sets forth the evidentiary requirements to meet the listings, Plaintiff fails to point to any evidence in the medical record which would support a finding that her impairments met or equaled either of these listings. In Fullerton v. Astrue, the United States District Court for the Eastern District of Arkansas, which is in this circuit, addressed this very issue. No. 4:08CV00448 JTK, 2010 WL 2734555 (E.D. Ark. July 9, 2010). In Fullerton, the plaintiff argued that the ALJ did not properly consider the plaintiff's joint pain under Listings 1.02 and 1.04. However, the court found that "[p]laintiff's brief points to no evidence in the record that would support a conclusion that he met or equaled either of these Listings. Such a failure to cite to the record in support of an argument is a waiver of the argument." Id. at *2; see also Vandenboom v. Barnhart, 421 F.3d 745, 750 (8th Cir. 2005) (rejecting the plaintiff's conclusory assertion that the ALJ erroneously failed to consider whether plaintiff met the Listings because plaintiff provided "no analysis of the relevant laws or facts regarding theses listings").

Further, Listing 1.04 Disorders of the Spine contains the following criteria:

> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-

anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);

or

B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;

or

C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. Pt. 404, Subpt. P, App. 1 (2010).

Listing 12.04 pertaining to Affective Disorders provides:

12.04 Affective Disorders: Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation.

The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied.

A. Medically documented persistence, either continuous or intermittent, of one of the following:

1. Depressive syndrome characterized by at least four of the following:

a. Anhedonia or pervasive loss of interest in almost all activities; or

b. Appetite disturbance with change in weight; or

c. Sleep disturbance; or

d. Psychomotor agitation or retardation; or

e. Decreased energy; or

15

f. Feelings of guilt or worthlessness; or

g. Difficulty concentrating or thinking; or

h. Thoughts of suicide; or

i. Hallucinations, delusions or paranoid thinking; or

2. Manic syndrome characterized by at least three of the following:

a. Hyperactivity; or

b. Pressure of speech; or

c. Flight of ideas; or

d. Inflated self-esteem; or

e. Decreased need for sleep; or

f. Easy distractibility; or

g. Involvement in activities that have a high probability of painful consequences which are not recognized; or

h. Hallucinations, delusions or paranoid thinking;

Or

3. Bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes);

And

B. Resulting in at least two of the following:

1. Marked restriction of activities of daily living; or

2. Marked difficulties in maintaining social functioning; or

3. Marked difficulties in maintaining concentration, persistence, or pace; or

4. Repeated episodes of decompensation, each of extended duration;

Or

C. Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently

> attenuated by medication or psychosocial support, and one of the following:
>
> 1. Repeated episodes of decompensation, each of extended duration; or
>
> 2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
>
> 3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R. Pt. 404, Subpt. P, App. 1 (2010).

As previously stated, other than quoting the listings, Plaintiff makes no attempt to demonstrate how her impairments meet either of these listings. "The burden of proof is on the plaintiff to establish that his or her impairment meets or equals a listing." Johnson v. Barnhart, 390 F.3d 1067, 1070 (8th Cir. 2004). Further, for a plaintiff to meet a listing, "an impairment must meet all of the listing's specified criteria." Id. (citation omitted). The ALJ did consider Listing 1.04 and found that Plaintiff's scoliosis did not meet or medically equal the criteria in this listing. (Tr. 18) Plaintiff has failed to meet her burden of demonstrating otherwise.

With regard to Listing 12.04, the record shows that the Plaintiff did not allege depression or any other mental impairment as a disabling condition, nor did the ALJ find that Plaintiff had a severe mental impairment. Failure to allege depression or anxiety in her applications for disability benefits is a significant factor in determining the severity of an alleged mental impairment. See Dunahoo v. Apfel, 241 F.3d 1033, 1039 (8th Cir. 2001) (finding substantial evidence in the record that plaintiff's depression did not result in significant functional limitations where plaintiff did not allege depression as the basis of her disability). Thus, the ALJ did not err in not considering whether Plaintiff's alleged

depression or anxiety met or medically equaled Listing 12.04. Further, the undersigned again notes that Plaintiff failed to explain how her alleged mental impairment met Listing 12.04. "Because Plaintiff did not connect the facts of the case to a particular listing, the argument is waived, and no further review by the court is required." Ollila v. Astrue, Civ. No. 09-3394 (JNE/AJB), 2011 WL 589037, at *11 (D. Minn. Jan. 13, 2011) (citations omitted).

Plaintiff also asserts that the ALJ erred in giving more weight to the consulting physician instead of Plaintiff's treating physician. Other than making a cursory reference to this argument, the Plaintiff cites no authority in support. "It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones." United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

In addition, the record shows that the ALJ did not improperly discredit Dr. Smith's medical source statements. "A treating physician's opinion should not ordinarily be disregarded and is entitled to substantial weight . . . provided the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." Singh v. Apfel, 222 F.3d 448, 452 (8th Cir. 2000) (citations omitted). However, "an ALJ may discount such an opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions." Holstrom v. Massanari, 270 F.3d 715, 720 (8th Cir. 2001) (citation omitted). Further, "[i]t is appropriate to give little weight to statements of opinion by a treating physician that consist of nothing more than vague, conclusory statements." Swarnes v. Astrue, Civ. No. 08-5025-KES, 2009 WL 454930, at *11 (D.S.D. Feb. 23, 2009) (citation omitted).

Here, while Plaintiff saw Dr. Smith off and on for several years, his treatment notes are

inconsistent with his medical source statements. For instance, none of Dr. Smith's notes indicate that Plaintiff's pain was debilitating. Indeed, on March 5, 2007, Plaintiff reported that she felt okay. (Tr. 256) On August 28, 2007, Dr. Smith prescribed physical therapy. (Tr. 257) Other than refilling medications, Dr. Smith's notes fail to demonstrate that he performed any type of physical examination or objective testing that would support his medical source statements. Instead, the statements appear to stem solely from Plaintiff's own complaints. "The ALJ was entitled to give less weight to Dr. [Smith's] opinion, because it was based largely on [Plaintiff's] subjective complaints rather than on objective medical evidence." Kirby v. Astrue, 500 F.3d 705, 709 (8th Cir. 2007) (citation omitted).

On the other hand, Dr. Burchett's opinion was based on objective testing, which demonstrated normal gait and comfortable appearance in both the supine and sitting positions. Plaintiff had no tenderness over the spinous processes or paravertebral muscle spasm in the cervical spine. Although her dorsal spine was stiff, lumbar flexion was only minimally restricted, with some mild limitation of cervical spine movement. Straight leg raise test was negative. In short, Plaintiff's pain was only from "time to time," and Dr. Burchett's extensive physical examination demonstrated that Plaintiff was not restricted to the extent she alleged.

Thus, the ALJ properly relied upon the consulting physician's assessment which was based on superior medical evidence. Holstrom v. Massanari, 270 F.3d 715, 720 (8th Cir. 2001) (citation omitted); see also Turner v. Astrue, No. 4:08-CV-107 CAS, 2009 WL 512785, at *11 (E.D. Mo. Feb. 27, 2009) (citation omitted) ("An ALJ may accord greater weight to a consulting physician only where the one-time medical assessment is supported by better or more thorough evidence . . . ."). Because substantial evidence supports the ALJ"s decision that Plaintiff was not under a disability at

any time through the date of the decision, the Court will affirm the Commissioner's determination.[4]

Accordingly,

**IT IS HEREBY ORDERED** that the final decision of the Commissioner denying social security benefits be **AFFIRMED**. A separate Judgment in accordance with this Memorandum and Order is entered this same date.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment [Doc. #26] and Motion to Remand [Doc. #27] are **DENIED.**

/s/ Terry I. Adelman
UNITED STATES MAGISTRATE JUDGE

Dated this 29th day of March, 2011.

---

[4] With regard to the "new" evidence submitted by the Plaintiff, which contains 4 photographs of the scar on Plaintiff's back, the undersigned need not consider this evidence in reaching a decision. 42 U.S.C. § 405(g) precludes consideration of evidence that was not before the Commissioner at the time of the decision. "Remand is appropriate only upon a showing by the claimant 'that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.'" Jones v. Callahan, 122 F.3d 1148, 1154 (8th Cir. 1997) (quoting 42 U.S.C. § 405(g)). Further, in order to be material, "the new evidence must be 'non-cumulative, relevant, and probative of the claimant's condition for the time period for which benefits were denied.'" Id. (quoting Woolf v. Shalala, 3 F.3d 1210, 1215 (8th Cir. 1993)). Although Plaintiff does not explain why the photographs are relevant or probative, the undersigned finds that they are cumulative. The medical records sufficiently demonstrate that Plaintiff underwent Rod Harrington fusion for a thoracic curve and that she had a long scar on her back. (Tr. 195-203, 241-43)